# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALINDA VILLAPUDUA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:18-cv-01465-LJO-EPG<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>**(ECF No. 17)**<br><br>**OBJECTIONS DUE WITHIN 21 DAYS** |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Disability Insurance Benefits and Supplemental Security Income.

At a hearing on December 3, 2019, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, makes the following Findings and Recommendations:

**I.　　Whether the ALJ's Residual Functional Capacity Finding is Fatally Flawed**

Plaintiff first argues that "The ALJ's Residual Functional Capacity Finding is Fatally Flawed," because it failed to take into consideration all relevant evidence in the record and

unfairly evaluated the medical opinions of record.

**A. The ALJ's Discussion of the Medical Record**

Plaintiff summarizes various pieces of medical evidence not included in the ALJ's summary of medical evidence, including Plaintiff's diagnoses of Chronic Pain Syndrome and myofascial pain syndrome; clinical findings of "rigidity and guarding," "trigger points," "taut bands and jump signs," restricted ranges of motion and radiculopathy (radiated pain) in Plaintiff's neck and back, positive Gaenslen's and Patrick's signs; and a cervical MRI showing multilevel disc bulges from C5 to C7, facet arthrosis from C2 to T1 and multilevel cervical spondylolysis. (ECF No. 17, at p. 22).

In response, the Defendant Commissioner summarizes evidence supportive of the ALJ's RFC, including medical imaging showing no significant abnormalities; and physical examinations showing full or nearly full strength, normal gait, normal reflexes, intact sensation and normal muscle bulk and tone. Additionally, doctors repeatedly reported that Plaintiff was well developed, well nourished, not in apparent distress, and had intact cranial nerves and normal neurological examinations.

According to the Ninth Circuit, the decision of the Commissioner must be upheld if it is supported by substantial evidence and if the Commissioner applied the correct legal standards. Pagter v. Massanari, 250 F.3d 1255, 1258 (9th Cir. 2001). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). In doing so, the ALJ must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923. However, in interpreting the evidence and developing the record, the ALJ does not need to "discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

Here, while the ALJ's summary of the medical evidence does not include all the evidence

cited by Plaintiff, it does not demonstrate such a bias to render the decision legally erroneous. The ALJ begins her discussion of the medical evidence of record by summarizing various pieces of evidence that show the existence of a medically determinable physical impairment, as follows:

> Over the whole record the claimant has reported experiencing back pain (6F/6), neck pain (5F/2), and radicular pain radiating, e.g., over her lower extremities (2F/15). She has also reported experiencing numbness and tingling over her upper extremities (6F/4), accompanied by dispersed weakness (4F/12). She has specifically reported experiencing pain, numbness, and tingling in her hands and fingers. (4F/11.) She has also reported experiencing persisting headaches. (1F/2.) Radiographs have provided a diagnostic basis for at least some of these reports. For instance, imaging in February 2016 revealed "mild degenerative changes" along the claimant's cervical spine. (2F/29.) Other imaging on that occasion also found disc-space narrowing along the claimant's lumbar spine. (2F/31.) More recent x-rays in May 2017 also found degenerative changes along the claimant's lumbar spine. (5F/14.) On clinical examination sources have objectively noted tenderness along the claimant's pine (1F/4), and swelling in the claimant's hands (5F/12). The claimant's straight leg raise testing has also been positive. (4F/12.) On these bases sources have diagnosed the claimant with evidence of degenerative disc disease (4F/2), lumbar radiculopathy (6F/6), facet arthropathy (6F/4), cervical and lumber myofascial pain syndrome (4F/9), rheumatoid arthritis (2F/17), generalized arthritis (2F/4), occipital neuralgia (4F/13), and migraine headaches (5F/2).

(A.R. 25).

Thus, while the ALJ did not address certain pieces of medical evidence that supported Plaintiff's disability claim, the ALJ addressed evidence both supportive and contrary to Plaintiff's disability claim. Moreover, substantial evidence supports the ALJ's determination regarding the RFC. The Court thus recommends findings that the ALJ's RFC is not subject to reversal on the basis that the ALJ unfairly omitted portions of the medical record supportive to Plaintiff's position.

**B. The ALJ's Rejection of Certain Opinions of Plaintiff's Treating Physician**

Plaintiff next claims that the ALJ erroneously rejected the opinions of Dr. Wahid, Plaintiff's treating physician.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, the opinion of

a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician. Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014). Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the uncontradicted opinion of treating physicians. Ghanim, 763 F.3d at 1160; see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (holding that ALJ can reject uncontradicted treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his own interpretation thereof, and making findings") (internal quotation marks and citation omitted). Where contradicted, the opinion of treating physicians may be rejected only for "specific and legitimate reasons that are supported by substantial evidence." *Ghanim*, 763 F.3d at 1160.

Here, Dr. Wahid's opinions were contradicted by the state agency medical consultants. (Exhibits 1A, 2A, 5A, 6A). Thus, this Court looks to whether the ALJ provided specific and legitimate reasons that are supported by substantial evidence for rejecting the opinions of Dr. Wahid.

The ALJ stated as follows regarding Dr. Wahid's opinions:

> Ali Abdul Wahid, M.D., a treating source (7F), opined on the claimant's residual functional capacities in June 2017. Dr. Wahid said that the claimant will be able to lift ten-to-twenty pounds two-to-three hours per day. (7F.) He also said that the claimant can stand and walk two-to-three hours per day. (7F.) He said, however, that he was unsure how long the claimant can sit in an eight-hour workday. (7F.) This opinion is given partial weight as well. Great weight is given to Dr. Wahid's statement that the claimant can stand and walk two-to-three hours in an eight-hour workday. As a treating source, Dr. Wahid is entitled to special deference under Social Security's rules and regulations. Further, that assessment is consistent with Dr. Gogna's observation that the claimant was able to perform a full squat. (1F.) Little weight is given to the remainder of this statement, however. This form provides little narrative explanation drawing a substantial connection between Dr. Wahid's conclusions and the claimant's objective medical evidence of record.

4

> This statement also does not evidence knowledge of any of the claimant's other medical evidence of record. Finally, the remainder of Dr. Wahid's conclusions are not consistent with the objective medical evidence of record. For example, the record indicates that the claimant will be able to lift and carry a full twenty pounds occasionally, including Dr. Gogna's notation of the claimant exhibiting normal whole-body muscle strength (1F). Further, although the claimant must be allowed an option to alternate between sitting and standing, and walking for up to ten minutes every hour, the evidence shows that the claimant will be able to remain on task while alternating, and will be able to sit for six hours in an eight-hour workday, and stand and walk for two hours in an eight-hour workday. For example, Dr. Gogna noted that at consultative examination the claimant walked into the examination room "without any difficulty," sat comfortably, and was able to mount and dismount the examination table "without any problem" (1F). Dr. Chu also recorded the claimant exhibiting normal sensation, and negative bilateral straight leg raise testing (5F/3-4). Great weight is therefore given to Dr. Wahid's statement that the claimant can stand and walk two-to-three hours in an eight-hour workday. Little weight, however, is therefore given to the remainder of this statement.
>
> Dr. Wahid also opined on the claimant's residual functional capacities in September 2015. (6E.) In this form Dr. Wahid said that the claimant can only stand and walk thirty minutes in an eight-hour workday. (6E.) He also said that the claimant will be required to elevate her legs throughout the workday. (6E.) This form is given little weight. This statement provides little narrative explanation connecting Dr. Wahid's opinions with the claimant's medical evidence of record. This form also does not evidence knowledge of any of the claimant's other medical evidence of record. Finally, Dr. Wahid's conclusions in this statement are not consistent with the medical evidence of record, including Dr. Gogna's observations of the claimant exhibiting full strength and substantially normal whole body range of motion on consultative examination (1F). This statement is further not consistent with Dr. Chu's observations of the claimant exhibiting full range of motion, and no swelling, in her ankles, knees, shoulders and elbows (5F/3-4). Dr. Wahid's form-opinion at Exhibit 6E is therefore accorded little weight.

(A.R. 30).

Plaintiff argues that this opinion deserves the deference of a treating physician. Plaintiff argues that there is no requirement for any opinion to be in narrative form, Dr. Wahid had actual knowledge of all of Plaintiff's medical records as her long term primary care physician, and the ALJ is incorrect in find that objective medical evidence failed to support Dr. Wahid's conclusions. Defendant, in contrast, argues that the ALJ correctly relied on objective medical evidence contrary to Dr. Wahid's opinions, that Dr. Wahid failed to explain the basis for his

conclusions, and that Dr. Wahid lacked at least some medical evidence.

The Court has reviewed Dr. Wahid's opinions. The June 2017 opinion is very brief indeed. (Exhibit 7F, at A.R. 482). It consists of one page. The objective findings cited are "disc problem low back on MRI." Dr. Wahid states that he is "unsure" how long Plaintiff can sit for an 8-hour day. The September 2015 opinion is also only one page. The objective findings relied on are "MRI, blood work." Here, Dr. Wahid says that Plaintiff can only sit 30-60 minutes over the entire work day. (Exhibit 6E, 282).

Upon consideration, the Court finds that the ALJ stated specific and legitimate reasons supported by independent evidence for the weight given to Dr. Wahid's opinions, especially in light of the contradictory opinions of other physicians. The ALJ properly acknowledged Dr. Wahid's role as treating physician. The ALJ appropriately noted the brevity of the opinion, especially regarding support for the conclusions regarding time sitting and standing per day. The ALJ pointed to specific pieces of objective evidence that did not support that opinion. While Plaintiff cites to other evidence that would support Dr. Wahid's opinion, this alone is not sufficient to render the ALJ's determination legally deficient. Moreover, Dr. Wahid's citation to an MRI and blood work is unsatisfying in light of other objective medical evidence cited by the ALJ. The Court agrees with Plaintiff that the ALJ's reasoning based on Dr. Wahid's lack of review of other medical evidence is not supported. However, it is also true that Dr. Wahid's opinion makes no attempt to navigate the various objective medical evidence to support his opinion.

Thus, this Court recommends finding that the ALJ's weight given to Dr. Wahid was sufficient and should be affirmed.

**C. The ALJ's Treatment of the Opinion of Dr. Gogna, Consultative Examiner**

Plaintiff next claims that the ALJ failed to give legally adequate reasons for partially rejecting the opinion of Dr. Gogna, an examining physician.

Dr. Gogna's opinions were contradicted by the state agency medical consultants. (Exhibits 1A, 2A, 5A, 6A). Therefore, under the legal standards cited above, the Court looks to whether the ALJ set forth specific and legitimate reasons supported by substantial evidence.

The ALJ gave the following reasons for the weight given to Dr. Gogna's opinions:

> Harjit Gogna, M.D., the claimant's internal medicine consultative examiner (1F), opined on the claimant's functional capacities in June 2015. Dr. Gogna said that the claimant can only lift ten pounds only occasionally. She also said that the claimant "may have difficulty" performing "any" climbing, stooping, and crouching. This opinion is given partial weight. Great weight is given to Dr. Gogna's conclusion that the claimant can stand and walk for two hours in an eight-hour workday, and her conclusion that the claimant can sit without limitations. Great weight is also given to Dr. Gogna's conclusion that the claimant has no limitations in reaching, handling, fingering, or feeling. Dr. Gogna personally examined the claimant. Further, those assessments are consistent with Dr. Gogna's own examination results, including her observation of the claimant able to complete a full squat without limitation (1F). Little weight, however, is accorded the remainder of Dr. Gogna's opinions. Although Dr. Gogna personally examined the claimant, she assessed the claimant on only one occasion, and did not have personal experience with the claimant's functional abilities. These statements are also equivocal and indefinite ("may have difficulty"). The remainders of Dr. Gogna's statements are further inconsistent with the objective medical evidence of record, including providers' numerous descriptions of the claimant as neurologically "intact," or "normal," (2F/1, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 53, 56, 58, 80, 82, 84, 87, 90, 92). The remainder of Dr. Gogna's assessments are also inconsistent with notations of the claimant revealing normal neck range of motion (5F/12), and substantial retained strength ("4/5") in her lower extremities (4F/12). The remainder of Dr. Gogna's opinions—especially her statement that the claimant may have difficulty performing any climbing, stooping, crouching, kneeling, and crawling—are further inconsistent with the results of Dr. Chu's consultative examination, which found, e.g., "normal" range of motion in the claimant's hips, normal sensation, and negative bilateral straight leg raise testing (5F/3-4). Great weight is therefore given to Dr. Gogna's conclusion that the claimant has no limitations in reaching, handling, fingering, or feeling. Little weight, however, is accorded the remainder of Dr. Gogna's opinions.

(A.R. 28-29).

The Court has reviewed these reasons in light of the arguments of all parties and recommends finding that it is sufficiently specific and legitimate supported by substantial evidence. The ALJ analyzed Dr. Gogna's opinions in detail and provided specific and legitimate reasons supported by relevant citations for the weight the ALJ gave to those opinions.

\\\
\\\

7

## II. The ALJ's Consideration of Subjective Symptom Testimony

Finally, Plaintiff claims that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony.

According to the Ninth Circuit:

> A two-step process is employed for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " Lingenfelter v. Astrue, 504 F.3d at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).
>
> "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so.' " Lingenfelter, 504 F.3d at 1036 (quoting Smolen, 80 F.3d at 1281). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Here, the ALJ found objective medical evidence of an underlying impairment. The Court looks, therefore, to whether the ALJ rejected the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so.

The ALJ provided the following reasons for rejecting the claimant's testimony about the severity of her symptoms:

> After careful consideration of the whole record, it is apparent that the claimant's allegations in this case cannot be wholly accepted.
>
> Most importantly, the objective medical evidence does not [sic] physical conditions of a *severity* consistent with the claimant's alleged impairments.. . .

Specifically, the claimant's conditions, even in combination, have not resulted in acute functional limitations. Rather, providers have often noted the claimant with substantial retained functionality. The claimant's predominantly normal physical functioning was especially evidence on internal medicine consultative examination with Harjit Gogna, M.D., in June 2015. (1F.) On that occasion Dr. Gogna observed that the claimant walked into the examination room "without any difficulty," sat comfortably, and was able to mount and dismount the examination table "without any problem." The claimant also revealed entirely full and normal whole-body muscle strength, Dr. Gogna saying that the claimant's muscle builk, tone, and strength throughout her upper and lower extremities was "normal." The claimant had normal ("5/5") grip strength. . . . Dr. Gogna even recorded that the claimant was able to complete a full squat without limitation. (1F).

. . .

The other objective and empirical evidence has been substantially consistent with Dr. Gogna's findings, revealing considerable retained functioning. For example, on at least twenty separate occasions between August 2014, and January 2016, providers in Exhibit 2F said that the claimant's neurological examination was either "intact," or "normal." . . .

The claimant similarly revealed substantial retained functioning on multi-point consultative examination with Michelle Chu, M.D., in March 2016—two years after the claimant's alleged onset date. (5F/3-4.) On that occasion, Dr. Chu found the claimant's joints over her whole-body substantially normal. For example, Dr. Chu said that the claimant revealed full range of motion, and no swelling, in her ankles, knees, shoulders, and elbows. . .

. . .

In sum, considering all the medical evidence, the severity of the claimant's conditions reflected in those records is inconsistent with the claimant's allegations of debilitating impairments. Especially convincing are Dr. Gogna's assessment of full whole-body strength, and predominantly normal whole-body range of motion. Dr. Chu's notations of substantial whole-body range of motion, and negative straight leg raising, is also persuasive. That evidence is inconsistent with the claimant's allegations that her impairments prohibit her from working.

The claimant's own reported functionality is further inconsistent with a finding of disability. The claimant alleges that spinal pathologies prohibit her from working. (3E.) However, she told internal medicine consultative examiner Gogna, M.D., that she remains able to drive a motor vehicle. (1F.) The claimant also told doctor Gogna that she retains the manipulative capacities required to use a telephone. (1F.) She also related that she occasionally goes for walks outdoors. (1F.) In the claimant's function report the claimant stated that she remains able to prepare at least basic meals, and complete simple household chores. (5E.) She also reported

> that she is able to drive a motor vehicle, and shop in stores in intervals up to thirty minutes. (5E.) The undersigned also notes that the claimant was able to hand write detailed answers in that Report.

(A.R. 27-29).

Plaintiff challenges this reasoning by pointing to other medical evidence supportive of Plaintiff's physical complaints. However, Plaintiff does not challenge that the objective medical evidence cited by the ALJ is in fact inconsistent with Plaintiff's allegations. Moreover, regarding her reported activities, while they do not necessarily demonstrate her ability to work, they call into question Plaintiff's testimony, as described earlier in the ALJ's opinion, that Plaintiff could not "attend to her personal hygiene, prepare meals, and complete household chores." (A.R. 25).

The Court recommends finding that the ALJ's reasons for not fully crediting Plaintiff's subjective symptom testimony were sufficiently specific and clear and convincing.

**III.    Conclusion**

Accordingly, the undersigned HEREBY RECOMMENDS that the decision of the Commissioner of Social Security be affirmed and the Clerk of the Court be directed to close the case.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **TWENTY-ONE (21) days** after service of the Findings and Recommendation, Petitioner may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).

\\\
\\\
\\\
\\\

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**December 17, 2019**__    /s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE